**LAW OFFICES OF ALEX GALVEZ**
Alex Galvez, Esq. SBN263824
1151 West 6th Street
Los Angeles, CA 90017
Tel.: (213) 623-2358
Fax.: (213) 623-2445

Attorneys for Petitioner,
JOSE LUIS FERNANDEZ GOMEZ

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOSE LUIS FERNANDEZ GOMEZ,<br><br>Petitioner,<br><br>VS.<br><br>MARKWAYNE MULLIN, Secretary, United States Department of Homeland Security; DAVID J. VENTURELLA, Acting Director of IMMIGRATION AND CUSTOMS ENFORCEMENT; THOMAS GILES in his official capacity as Acting Field Office Director for Los Angeles, U.S. Immigration and Customs Enforcement; EDDY WANG, Special Agent in Charge for Los Angeles, Homeland Security Investigations, U.S. Immigration and Customs Enforcement; FERETI SEMAIA, WARDEN OF ADELANTO ICE PROCESSING CENTER, in his/her capacity as warden of the ADELANTO ICE PROCESSING CENTER, and DOES 1 to 10, INCLUSIVE.<br><br>Respondents. | Case No. 5:26-cv-6005<br><br>**EMERGENCY VERIFIED PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241; REQUEST FOR IMMEDIATE RELEASE** |

## I. INTRODUCTION

1. Petitioner Jose Luis Fernandez Gomez respectfully petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the statutory and constitutional legality of his arrest and continuing civil immigration detention at the Adelanto ICE Processing Center following his September 25, 2026 apprehension outside his residence.
2. Petitioner is a native and citizen of Mexico who has lived in the United States continuously since approximately January 2004. He has established a family, maintained substantial employment, and developed meaningful residential and community ties over more than two decades.
3. He is married and is the father of four children, including two United States citizens. His family resides in Southern California, and he reports having maintained employment with AFE Power since approximately 2009.
4. Petitioner reports no criminal history, prior removal orders, previous immigration detention, or prior immigration applications.
5. On September 25, 2026, at approximately 7:55 to 8:00 a.m., immigration enforcement officers confronted Petitioner outside his residence as he was preparing to enter his truck and leave for work.
6. Petitioner reports that he was taken into custody without an administrative arrest warrant. Based on his account, officers did not identify any

individualized circumstances demonstrating that he was likely to escape before a warrant could be obtained.

7. The available record does not identify an attempted flight, resistance, criminal activity, danger to officers, or any exigency explaining why the Government could not obtain an administrative warrant before arresting an individual at his own residence.

8. The nature of the encounter is particularly significant because Congress did not authorize warrantless civil immigration arrests merely upon probable cause to believe a person is removable.

9. Section 1357(a)(2) separately requires an individualized reason to believe that the person is likely to escape before an administrative arrest warrant can be obtained. The implementing regulation preserves that distinct requirement. 8 U.S.C. § 1357(a)(2); 8 C.F.R. § 287.8(c)(2)(ii).

10. The Ninth Circuit has recognized the statutory significance of that limitation. *Mountain High Knitting, Inc. v. Reno*, 51 F.3d 216, 218 (9th Cir. 1995).

11. More recently, the Central District addressed the Government's asserted practice of conducting warrantless civil immigration arrests without individualized pre-arrest escape determinations. In *Vasquez-Perdomo v. Mullin*, No. 2:25-cv-05605-MEMF-SP (C.D. Cal. Sept. 2, 2026), as amended September 16, 2026, the Court entered preliminary injunctive relief

prohibiting such arrests within the District unless officers first determine, on an individualized basis, that probable cause exists to believe the individual is likely to escape before an administrative warrant can be obtained.

12. The Court further required documentation of the particularized facts supporting that assessment and rejected the practice of treating suspected unlawful presence as sufficient, by itself, to satisfy the likelihood-of-escape requirement.

13. Petitioner's September 25 arrest occurred after entry of that amended injunction. His reported residence and proposed release address are in Riverside, California, within the Central District.

14. Accordingly, if the arrest occurred at that residence and was warrantless as reported, the Government's conduct raises serious questions under both the statute and the operative preliminary injunction.

15. Petitioner does not ask this Court to presume that every arrest occurring within the District violated the injunction. Rather, he requests examination of the actual circumstances of his seizure, the existence and timing of any administrative warrant, and the individualized escape determination, if any, made before the arrest.

16. Nor does the existence of lawful arrest authority automatically establish that continued physical incarceration is necessary. Under 8 U.S.C. § 1226(a),

detention is ordinarily discretionary rather than mandatory absent a distinct statutory predicate.

17. The statutory and regulatory framework therefore requires attention to the initial custody decision and the availability of procedures through which an individual may seek release.

18. Here, Respondents have not furnished counsel with a Form I-200 establishing antecedent warrant authority, a Form I-213 describing the circumstances of apprehension, or a Form I-286 demonstrating the timing, substance, and notice of the initial custody determination.

19. Petitioner recognizes that the present absence of these documents from counsel's records does not conclusively establish that the Government never created them. Their absence nevertheless prevents determination of whether the statutory and regulatory safeguards were actually satisfied.

20. The importance of these separate obligations was recently illustrated in *Antonio Sanchez Marquez v. Warden*, No. 5:26-cv-05368-MBK, Dkt. 13 (C.D. Cal. Oct. 1, 2026).

21. In that case, Magistrate Judge Michael B. Kaufman granted habeas relief and ordered immediate release after concluding that immigration authorities had failed to establish compliance with the warrantless-arrest requirements of §

1357(a)(2) and had failed to furnish the required initial custody determination.

22. The Court rejected the Government's position that the violations could be adequately remedied merely by offering an ordinary immigration bond hearing.

23. Instead, the Court determined that restoring the petitioner's prior physical liberty was appropriate where the Government had failed to establish lawful detention from its inception.

24. In *Sanchez Galicia v. Johnson*, No. 5:26-cv-05717-AJR, Dkt. 13 (C.D. Cal. Oct. 7, 2026), the Central District likewise ordered immediate release after finding that a subsequent adverse bond determination did not cure the antecedent deprivation of procedural due process.

25. These decisions do not establish a categorical rule that every irregular arrest requires immediate release. They establish persuasive authority that the nature of the original statutory or constitutional violation must inform the appropriate habeas remedy and that a later hearing is not invariably sufficient.

26. Petitioner's circumstances present a substantial liberty interest deserving individualized constitutional consideration. He lived outside immigration detention for more than twenty-two years after his last reported entry,

established a long marriage, raised children, and maintained regular employment.

27. His arrest at home while leaving for work deprived him of that established liberty without any presently identified individualized assessment explaining why physical incarceration was necessary before an administrative warrant could be obtained.

28. The Government retains legitimate interests in enforcing the immigration laws, ensuring attendance at proceedings, and protecting public safety. But it must pursue those interests through the statutory and constitutional procedures Congress and the Constitution require.

29. Petitioner accordingly seeks immediate release subject to reasonable lawful noncustodial conditions.

30. Alternatively, if the Court determines that further process is necessary before release, Petitioner requests a prompt individualized custody proceeding before a neutral decision-maker empowered to order release, supported by meaningful notice, an accurate evidentiary record, reasoned findings, and consideration of reasonable alternatives to detention.

## II. JURISDICTION AND VENUE

31. This Court possesses jurisdiction under 28 U.S.C. § 2241(c)(3) because Petitioner is held in federal immigration custody and alleges that his

detention violates the Constitution, statutes, and regulations of the United States.

32. Habeas corpus traditionally provides the mechanism for testing the legality of executive confinement and securing release from unlawful custody. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *INS v. St. Cyr*, 533 U.S. 289, 301 (2001).

33. The Supreme Court has recognized habeas jurisdiction over immigration detention challenges. *Demore v. Kim*, 538 U.S. 510, 516–17 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001).

34. Federal-question jurisdiction additionally exists under 28 U.S.C. § 1331 to the extent Petitioner's claims arise under the Fifth Amendment, 8 U.S.C. §§ 1226(a) and 1357(a)(2), and the regulations implementing those provisions.

35. Petitioner is physically confined at the Adelanto ICE Processing Center in Adelanto, California, within San Bernardino County and the Eastern Division of the Central District of California.

36. His immediate physical custodian is therefore located within this District. Venue is proper under the district-of-confinement principles recognized in *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35, 442–43 (2004).

37. Petitioner does not seek review of a final removal order. He reports that no prior removal order exists and that his current immigration proceedings remain pending.

38. He does not request adjudication of his removability, cancellation of removal, adjustment of status, or termination of his immigration proceedings.

39. His challenge concerns the statutory authority for his September 25 apprehension and the constitutional and regulatory basis for his continued physical detention.

40. Section 1226(e) does not categorically foreclose review of legal and constitutional challenges to detention authority or procedures. See *Jennings v. Rodriguez*, 583 U.S. 281, 295–96 (2018).

41. Petitioner does not request that this Court substitute its discretionary judgment for an immigration judge's properly conducted bond evaluation. He challenges whether lawful initial custody procedures occurred and whether present incarceration is constitutionally justified.

42. The Court may dispose of this Petition as law and justice require under 28 U.S.C. § 2243.

## III. PARTIES

43. Petitioner JOSE LUIS FERNANDEZ GOMEZ, is a native and citizen of Mexico detained at the Adelanto ICE Processing Center.

44. Respondent FERETI SEMAIA, Acting or Current Warden, ADELANTO ICE PROCESSING CENTER is Petitioner's immediate physical custodian and is sued in the official custodial capacity.

45. Respondent MARKWAYNE MULLIN is the Secretary of the United States Department of Homeland Security and is named in his official capacity to the extent necessary to administer effective relief concerning the challenged detention.

46. Respondent DAVID J. VENTURELLA is the Acting Director of United States Immigration and Customs Enforcement and is named in his official capacity concerning ICE custody policies and implementation of any habeas relief.

47. Respondent THOMAS GILES is the Field Office Director of ICE's Los Angeles Field Office and is named in his official capacity to the extent he exercises responsibility over Petitioner's detention, custody classification, and potential release.

48. Respondents DOES 1 through 10 are officials whose identities are presently unknown and whose responsibilities may include Petitioner's apprehension, initial custody determination, detention, or implementation of release.

49. Petitioner seeks no monetary damages and asserts no individual-capacity claim.

## IV. FACTUAL BACKGROUND

### A. *Petitioner Has Lived In The United States For More Than Two Decades And Maintains Substantial Family And Economic Ties*

50. Petitioner first entered the United States without inspection on approximately January 10, 2001.

51. Petitioner has remained in the United States since that entry before his September 2026 arrest.

52. He has been married since approximately April 29, 2000. Petitioner has four children: Angel Alejandro Fernandez Bravo; Luis Fernando Fernandez Bravo; Kaylen Fernandez Bravo; Emmanuel Fernandez Bravo.

53. Petitioner has maintained longstanding employment. He has been at AFE Power r since approximately 2009 and reports annual earnings of approximately $48,000.

54. Petitioner has no criminal convictions, no criminal arrests, and no known criminal history.

55. He has no prior immigration detention, no previous removal order, and no prior immigration applications.

56. His proposed release residence is 3883 Buchanan Street, Riverside, California 92503, where he expects to reside with his wife and children.

57. These circumstances are significant to an individualized assessment of present flight risk, community ties, and available alternatives to incarceration.

58. Petitioner does not assert that longstanding residence or family relationships confer lawful immigration status or preclude lawful immigration enforcement.

59. Rather, they establish the extent of the private liberty interest affected by the sudden decision to incarcerate him and provide objective information relevant to whether reasonable supervision could secure future appearances.

B. *ICE Arrested Petitioner Outside His Home As He Prepared To Leave For Work*

60. On September 25, 2026, at approximately 7:55 to 8:00 a.m., Petitioner was preparing to enter his truck outside his residence to leave for work.

61. Immigration enforcement officers approached him and took him into custody.

62. Petitioner reports that officers did not possess or present an administrative arrest warrant.

63. The operational circumstances and reasons for the encounter have not been confirmed.

64. Petitioner reports that he had not previously been detained or ordered removed and had no pending immigration application through which he expected a scheduled enforcement encounter.

65. The presently available information does not establish why immigration officers selected Petitioner for apprehension on that date.

66. Nor does the available record identify an individualized finding, made before physical seizure, that Petitioner was likely to escape before an administrative warrant could be obtained.

67. Petitioner's arrest occurred at or near his home, shortly before his ordinary workday, where his fixed residence and employment would have been relevant circumstances in evaluating whether immediate warrantless detention was necessary.

68. Petitioner does not claim that a fixed residence or established job makes flight impossible.

69. He asserts that these circumstances required genuine individualized consideration rather than a presumption that suspected unlawful immigration status necessarily created an escape exigency.

70. The relevant arrest warrant, Form I-213, Field Operation Worksheet, officer narratives, and any pre-arrest escape-risk documentation remain within Respondents' possession.

71. Petitioner accordingly requests examination of those records before the Court determines whether the arrest complied with the governing statute and injunction.

C. *Respondents Have Not Supplied The Records Establishing The Initial Legal Basis For Continued Incarceration*

72. Petitioner was taken to immigration custody and remains confined at the Adelanto ICE Processing Center.

73. The presently supplied records do not include a Form I-200 documenting a pre-arrest administrative warrant.

74. Nor do they include a Form I-213 describing the officers' factual basis for arrest or the circumstances of apprehension.

75. No Form I-286 or equivalent written initial custody determination has been furnished in the documents reviewed for this Petition.

76. Petitioner therefore cannot determine from the present record when the initial custody determination was made, who made that decision, what evidence supported continued confinement, or whether the required notices and review procedures were provided.

77. Petitioner does not contend that the absence of those documents from counsel's materials, without more, proves that the documents do not exist.

78. The question is whether Respondents actually complied with the statutory and regulatory requirements governing the initial acquisition and continuation of physical custody.

79. That question is particularly significant in light of the Central District's decision in *Sanchez Marquez*, which examined both warrantless arrest authority and initial custody compliance as separate statutory deficiencies.

D. *Petitioner's Removal Proceedings Remain Pending*

80. Petitioner is scheduled for an in-person Master Calendar Hearing on October 14, 2026, at 8:30 a.m., before Immigration Judge Bledar Gora at the Adelanto Immigration Court.

81. The hearing had not yet occurred as of the preparation of this Petition.

82. Petitioner reports no previous removal order or prior immigration detention.

83. On the presently available facts, his custody appears to be governed by the discretionary detention framework of 8 U.S.C. § 1226(a), absent evidence of a legally applicable mandatory-detention provision.

84. Respondents should therefore identify the actual detention statute and explain any contrary classification.

85. The fact that removal proceedings are pending does not itself establish that continued physical incarceration is necessary or that the required initial custody procedures were performed.

86. This Petition is independent of the merits of those proceedings and does not seek to interfere with the immigration judge's consideration of removability or relief from removal.

## V. LEGAL FRAMEWORK

### A. *The Controlling Detention Statute Is § 1226(A), Not The Mandatory Admission Detention Provision*

87. Section 1226(a) authorizes discretionary arrest, detention, and release pending a decision on removal.

88. It permits the Government, where authorized by law, to release individuals on bond or conditional parole.

89. Petitioner was arrested in the interior of the United States after approximately twenty-two years of residence following his last reported entry.

90. The available records identify no qualifying criminal conviction or other basis for mandatory detention under § 1226(c).

91. In *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026), the Ninth Circuit held that noncitizens present without admission who are apprehended in the interior are governed by § 1226 rather than automatically subjected to mandatory detention under § 1225(b)(2)(A).

92. That holding is directly relevant to Petitioner's detention classification.

93. Respondents therefore may not rely solely upon Petitioner's historical entry without inspection to deprive him of the discretionary custody framework Congress established.

94. The applicability of § 1226(a), however, does not itself establish that every subsequent arrest or custody decision made under that statute was lawful.

95. The separate statutory requirements governing the method of arrest and initial custody review remain operative.

B. *Section 1357(A)(2) Imposes An Independent Escape-Before-Warrant Condition*

96. Section 1357(a)(2) permits a warrantless civil immigration arrest only when the arresting officer possesses reason to believe that the individual is present in violation of immigration law and is likely to escape before a warrant can be obtained.

97. The implementing regulation, 8 C.F.R. § 287.8(c)(2)(ii), preserves the requirement that immigration officers obtain a warrant unless circumstances satisfy the specified exception.

98. The separate statutory escape requirement cannot be eliminated by conflating suspected removability with the likelihood that a particular person will evade officers before a warrant can be obtained.

99. *Mountain High Knitting, Inc. v. Reno*, 51 F.3d 216, 218 (9th Cir. 1995), recognizes the importance of the escape-before-warrant requirement in civil immigration enforcement.

100. The inquiry is individualized and temporal. It concerns circumstances known before the seizure and whether those circumstances justify foregoing the ordinary administrative warrant process.

101. Petitioner's longstanding residence, identifiable home, employment, family relationships, and absence of reported criminal history do not categorically preclude flight.

102. They do, however, bear directly upon whether officers had an individualized, objectively sufficient reason to believe Petitioner would escape before an administrative warrant could be obtained.

103. Respondents should therefore identify the actual facts supporting any asserted escape exigency rather than rely upon the existence of an immigration violation alone.

//

//

**C.** *The Amended Vasquez-Perdomo Injunction Reinforces The Requirements Applicable To This Arrest*

104. In *Vasquez-Perdomo v. Mullin*, No. 2:25-cv-05605-MEMF-SP (C.D. Cal. Sept. 2, 2026), as amended September 16, 2026, the Central District

issued preliminary injunctive relief governing warrantless civil immigration arrests within the District.

105. The Court prohibited such arrests without an individualized pre-arrest determination of probable cause to believe the person is likely to escape before an administrative warrant can be obtained.

106. The Court rejected the treatment of suspected unlawful immigration status alone as sufficient justification for foregoing the warrant process.

107. The amended injunction additionally requires documentation of the particularized facts supporting the pre-arrest determination, including the relevant date, time, and circumstances.

108. The amended class definition encompasses specified persons arrested in the Central District since June 6, 2025, without a warrant or the required individualized assessment.

109. Petitioner's September 25, 2026 arrest occurred after the amended injunction was entered.

110. If the arrest occurred at the Riverside residence identified in his bond worksheet, it occurred within the geographic scope of the injunction.

111. Petitioner therefore requests that the Court consider the amended injunction's statutory reasoning and determine whether the arrest circumstances place him within its operative protections.

112. Petitioner does not contend that the class injunction necessarily resolves the individualized habeas remedy in this case.

113. Rather, it provides directly relevant judicial analysis confirming the importance of the pre-arrest escape determination and contemporaneous documentation.

D. *The Government Must Separately Comply With Initial Custody Procedures Under § 1226(A)*

114. Even where an immigration officer possesses lawful authority to apprehend a noncitizen, the authority to arrest does not automatically justify continued physical incarceration.

115. Section 1226(a) authorizes discretionary detention and release pending removal proceedings, subject to the procedures prescribed by regulation.

116. Under 8 C.F.R. § 287.3, a warrantless arrest ordinarily requires prompt examination and subsequent administrative decisions and advisals, subject to the regulatory exceptions.

117. Sections 236.1 and 1236.1 provide for initial administrative custody determinations and access to custody review where authorized.

118. Form I-286 ordinarily documents the initial custody decision and provides information concerning the opportunity to request immigration-judge redetermination.

119. These procedures are distinct from the arrest itself.

120. A determination that an individual is removable does not independently establish that physical incarceration is necessary to protect the community or secure appearance.

121. The initial custody process exists to ensure that an official authorized to make that decision actually considers whether detention or release is appropriate.

122. The absence of the initial custody records from the presently supplied materials therefore presents a significant question requiring Respondents' return.

## CLAIMS FOR RELIEF

### COUNT ONE

### Unlawful Warrantless Civil Immigration Arrest Under 8 U.S.C. § 1357(A)(2)

123. Petitioner incorporates the preceding allegations.

124. On September 25, 2026, ICE officers apprehended Petitioner outside his home as he was preparing to leave for work.

125. Petitioner reports that no administrative arrest warrant was presented or possessed when officers imposed physical custody.

126. If Respondents maintain that a valid warrant existed, Petitioner requests the actual Form I-200 and its creation, approval, signature, and issuance history.

127. A warrant issued after the physical seizure cannot retroactively establish antecedent warrant authority.

128. If the arrest was warrantless, Respondents were required to establish an individualized pre-arrest basis to believe that Petitioner was likely to escape before an administrative warrant could be obtained.

129. The available record identifies no such assessment.

130. Nor does it identify an attempt to flee, physical resistance, danger to the officers, or any particular circumstance demonstrating that Petitioner would disappear during the period necessary to secure a warrant.

131. His fixed residence, established family, long employment history, and absence of reported criminal history were relevant circumstances bearing upon the statutory inquiry.

132. Respondents were not authorized to replace that inquiry with the categorical proposition that an individual lacking lawful immigration status is necessarily likely to escape.

133. The Central District's amended injunction in *Vasquez-Perdomo* reinforces that distinction and requires documentation of the individualized assessment for covered warrantless arrests.

134. In *Sanchez Marquez*, the Court determined that the Government had failed to establish compliance with the statutory warrantless-arrest requirements and ordered immediate release when the arrest and initial custody procedures were unlawfully omitted.

135. Petitioner therefore requests that the Court determine whether officers complied with § 1357(a)(2) and § 287.8(c)(2)(ii).

136. If the arrest violated those provisions and Respondents cannot establish an independent lawful basis for continued detention sufficient to remedy the antecedent defect, Petitioner requests immediate release.

## COUNT TWO

### Failure To Provide The Required Initial Custody Determination

137. Petitioner incorporates the preceding allegations.

138. The statutory authority to apprehend Petitioner did not eliminate the separate obligation to determine whether continued detention was warranted under § 1226(a).

139. The governing regulations require initial custody procedures and applicable notices designed to ensure individualized consideration of detention or release.

140. Respondents have not furnished counsel with a Form I-286 or equivalent record identifying the official who made the initial custody determination, the time of the decision, the basis for continuing detention, or the notices provided.

141. Petitioner therefore alleges, on information and belief and subject to Respondents' administrative records, that the Government may have failed to comply with the required initial custody procedures.

142. The omission is legally distinct from the question whether officers possessed authority to arrest him.

143. *Sanchez Marquez* illustrates the importance of this distinction. The district court addressed both the unlawful warrantless arrest and the absence of an initial custody determination, rejecting a hearing-only remedy where the Government had not established lawful detention from its inception.

144. Petitioner requests production of the initial custody decision, any related Form I-286, the date and time of the determination, the evidence considered, the deciding official's identity, and proof that Petitioner received the required notices.

145. If Respondents failed to provide the required process and cannot establish an independently sufficient lawful basis for continued custody, Petitioner requests immediate release.

## COUNT THREE

### Deprivation Of Established Physical Liberty Without Constitutionally Adequate Process

146. Petitioner incorporates the preceding allegations.

147. The Fifth Amendment protects all persons within the United States against deprivation of physical liberty without due process of law.

148. The Supreme Court has recognized that freedom from governmental physical restraint lies at the core of the liberty protected by due process. *Zadvydas*, 533 U.S. at 690, 693.

149. The constitutional adequacy of procedures governing deprivation of liberty is informed by the private interest affected, the risk of erroneous deprivation and probable value of additional safeguards, and the Government's legitimate interests. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

150. Petitioner's private interest is substantial. For more than two decades he lived outside immigration detention, maintained a marriage, raised children, remained available at an identifiable residence, and supported his household through ongoing employment.

151. Those circumstances do not confer lawful immigration status or immunity from detention. They do establish the substantial human and constitutional consequences of the Government's decision to remove him from his home and family.

152. The risk of erroneous deprivation is substantial where the arrest was allegedly warrantless, no pre-arrest individualized escape finding has been identified, and Respondents have not provided the record establishing the initial custody determination.

153. The procedural safeguards at issue are directly related to the legality and necessity of confinement.

154. A pre-arrest escape assessment protects against the risk that officers will substitute generalized immigration status for the specific statutory justification necessary to dispense with the warrant process.

155. An individualized initial custody determination protects against the separate risk that a person will remain incarcerated without any competent assessment of whether continued custody is necessary.

156. These safeguards have particular value where the individual reports no criminal history, has a fixed residence, maintains longstanding employment, and possesses substantial family ties.

157. The Government's interests in enforcing immigration law, preventing flight, and protecting public safety are legitimate and weighty.

158. But those interests must be pursued within the procedural limits Congress established and the Constitution requires.

159. In *Sanchez Galicia v. Johnson*, No. 5:26-cv-05717-AJR, Dkt. 13 (C.D. Cal. Oct. 7, 2026), the Central District recognized that substantial established liberty may give rise to a protected Fifth Amendment interest and that a later adverse bond proceeding does not necessarily cure an antecedent due process violation.

160. The court ordered immediate release after concluding that the subsequent hearing did not remedy the constitutional deprivation resulting from the original detention.

161. The circumstances are not identical. The petitioner in *Sanchez Galicia* had resided in the United States for approximately twenty-five years and had received an adverse bond determination.

162. Mr. Fernandez Gomez reports more than twenty-two years of residence and does not presently have an identified immigration-judge bond decision.

163. Nevertheless, the same core constitutional distinction is relevant: the subsequent availability of an administrative hearing does not automatically

establish that an initial deprivation imposed without the required safeguards was lawful.

164. Petitioner requests a determination that his detention violates due process if the Court finds that Respondents deprived him of established physical liberty without adequate statutory and constitutional process and cannot demonstrate a sufficient independent basis for continued custody.

## COUNT FOUR

### Continuing Custody Without Demonstrated Individualized Justification

165. Petitioner incorporates the preceding allegations.

166. Section 1226(a) establishes a framework under which continued civil immigration detention is discretionary, subject to the procedures and statutory limits governing custody determinations.

167. Respondents have not furnished the administrative documentation necessary to establish when Petitioner's initial detention determination was made or what individualized circumstances justified incarceration rather than supervised release.

168. Petitioner's reported lack of criminal history, longstanding residence, family relationships, proposed release address, and sustained employment are material evidence relevant to any lawful custody evaluation.

169. The Government may identify other facts supporting detention. Petitioner requests that those facts be disclosed and subjected to meaningful individualized consideration rather than presumed.

170. In *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1202 (9th Cir. 2022), the Ninth Circuit examined the extensive procedural protections available under the ordinary § 1226(a) framework.

171. The existence of those safeguards is consequential; Respondents cannot rely upon the general availability of statutory custody review while failing to establish that the procedures required at the outset were actually provided.

172. Petitioner therefore requests that the Court determine whether continuing custody is legally supported by an individualized decision made through the applicable statutory and constitutional process.

//

//

**ADMINISTRATIVE EXHAUSTION DOES NOT CATEGORICALLY BAR REVIEW OF THE INITIAL ARREST AND CUSTODY CLAIMS**

173. Petitioner recognizes that exhaustion is an important consideration in immigration habeas proceedings.

174. Administrative exhaustion under § 2241 is ordinarily prudential rather than jurisdictional. *Laing v. Ashcroft*, 370 F.3d 994, 997–1000 (9th Cir. 2004); *Puga v. Chertoff*, 488 F.3d 812, 815–16 (9th Cir. 2007).

175. The Ninth Circuit generally requires exhaustion of available BIA remedies before federal habeas reconsideration of an adverse bond determination. *Leonardo v. Crawford*, 646 F.3d 1157, 1160–61 (9th Cir. 2011).

176. Petitioner does not contend that ordinary discretionary custody determinations may automatically be bypassed simply by seeking habeas review.

177. Rather, his principal claims concern the statutory prerequisites governing the initial warrantless arrest and the procedures required when immigration authorities first decided to continue physical custody.

178. These claims are analytically distinct from a request that an immigration judge reconsider the weight assigned to discretionary bond factors.

179. An ordinary bond hearing may examine whether continued custody is appropriate at the time of the hearing. It does not necessarily determine whether arresting officers complied with the pre-arrest escape requirement or remedy the complete absence of required initial custody procedures.

180. In *Sanchez Marquez*, the Central District declined to require merely a later bond hearing where the Government failed to establish lawful initial custody.

181. In *Sanchez Galicia*, the Court ordered release despite an actual intervening adverse bond proceeding because the later hearing did not cure the antecedent constitutional violation.

182. Those decisions provide persuasive support for evaluating exhaustion in relation to the particular statutory or constitutional injury asserted.

183. Petitioner asks this Court to examine whether the administrative remedies available to him can meaningfully adjudicate the legality of the September 25 warrantless arrest and furnish an effective remedy for any omitted initial custody procedures.

184. If the Court concludes that additional administrative proceedings are required for an ordinary discretionary custody issue, that conclusion should not automatically foreclose review of the independent arrest-related claims.

185. Petitioner requests excusal of exhaustion to the extent the available process is inadequate, futile, or incapable of preventing irreparable injury, consistent with *Laing* and *Puga*.

186. Alternatively, Petitioner requests a conditional writ providing for an expedited custody proceeding rather than outright dismissal if the Court

determines that administrative custody review must be conducted before final federal relief.

**IMMEDIATE RELEASE IS THE APPROPRIATE PRIMARY REMEDY WHERE THE GOVERNMENT FAILS TO ESTABLISH LAWFUL INITIAL DETENTION**

187. The traditional remedy provided through habeas corpus is release from unlawful physical confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

188. Section 2243 authorizes this Court to dispose of the Petition as law and justice require.

189. The appropriate remedy must correspond to the statutory or constitutional violation established.

190. In *Sanchez Marquez*, the Central District rejected a proposed remedy limited to a future bond hearing after determining that immigration officers failed to establish the legality of the warrantless arrest and omitted required initial custody procedures.

191. Because the Government had not demonstrated lawful detention from its inception, the Court ordered immediate release and imposed prospective safeguards against re-detention.

192. In *Sanchez Galicia*, the Court likewise ordered release notwithstanding a later adverse bond determination where the antecedent deprivation violated procedural due process.

193. Those decisions illustrate that restoration of prior physical liberty may be appropriate when belated administrative compliance cannot adequately remedy the injury.

194. Petitioner recognizes that neither decision establishes an automatic release remedy for every defective immigration arrest.

195. The Court must consider whether the Government has established an independently sufficient lawful basis for continued custody, whether the alleged procedures were actually omitted, and what relief is necessary to remedy any proven statutory or constitutional injury.

196. Here, Petitioner alleges that officers arrested him without a warrant or individualized escape assessment after more than twenty-two years of residence and that the required initial custody determination has not been demonstrated.

197. If those allegations are established and Respondents cannot identify sufficient intervening lawful process supporting continued custody, immediate release would most directly restore the liberty interest affected by the unlawful deprivation.

198. Release would not terminate removal proceedings, confer immigration status, or prevent lawful supervision.

199. Petitioner would remain subject to applicable reporting requirements and lawful future immigration proceedings.

200. The Court should therefore order immediate release under reasonable noncustodial conditions upon a finding that present incarceration rests upon the violations asserted and cannot be independently justified.

201. Petitioner further requests appropriately tailored protection against renewed detention on materially unchanged circumstances without compliance with applicable statutory and constitutional safeguards.

//

//

## ALTERNATIVE RELIEF: A CONSTITUTIONALLY ADEQUATE CUSTODY HEARING

202. If this Court declines immediate release, Petitioner requests a custody proceeding within seven days before a neutral decisionmaker empowered to order release.

203. The proceeding should provide meaningful notice of the asserted grounds for continued detention, access to the evidence relied upon, an opportunity to present and contest evidence through counsel, and a record sufficient for judicial review.

204. The adjudicator should separately evaluate present danger and flight risk.

205. Such evaluation should address Petitioner's lack of reported criminal history, longstanding residence, marriage, family responsibilities, available residence, sustained employment, and any additional reliable evidence supplied by Respondents.

206. The adjudicator should expressly examine whether monetary bond, reporting requirements, residence restrictions, electronic monitoring, or any combination of lawful alternatives can reasonably mitigate substantiated risks.

207. Petitioner requests that the Government bear the burden of demonstrating by clear and convincing evidence the current necessity of incarceration as an as-applied constitutional remedy for the violations established in this case.

208. Petitioner acknowledges that *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022), does not impose a categorical clear-and-convincing burden upon the Government in every ordinary initial § 1226(a) bond proceeding.

209. The burden requested here is therefore tied to any particular constitutional deficiency found by this Court, rather than presented as a universal rule governing all initial bond hearings.

210. If the Court concludes that another standard governs, Petitioner requests a hearing applying the correct legal standard and sufficient procedures to remedy any proven violation.

211. Petitioner further requests immediate release if Respondents fail to furnish the ordered hearing within the time established by the Court.

## EXPEDITED RETURN AND PRODUCTION OF THE ARREST AND CUSTODY RECORD

212. Much of the evidence necessary to resolve this Petition is in Respondents' exclusive possession.

213. Petitioner therefore requests an expedited return identifying the precise detention statute presently invoked and the legal basis for continued custody.

214. The return should include any Form I-200 or other administrative warrant authorizing arrest, together with the contemporaneous issuance, approval, and service information establishing whether the warrant preceded physical seizure.

215. It should further include the complete Form I-213, arrest narratives, Field Operation Worksheet, operational plan, officer reports, and any

documents identifying the basis for selecting Petitioner as an enforcement target.

216. Respondents should produce the pre-arrest individualized likelihood-of-escape assessment, if one exists, including its factual basis and the date and time it was made and documented.

217. The return should also identify any initial custody determination under § 1226(a), including Form I-286 or equivalent documentation, the official responsible, the date and time of the determination, the factors considered, and the notice furnished concerning administrative review rights.

218. The September 2026 amended *Vasquez-Perdomo* injunction provides additional reason to require documentation of whether the officers conducting this arrest complied with the applicable pre-arrest assessment requirements.

219. If Respondents contend that an emergency justified departure from ordinary regulatory procedures, they should identify the relevant circumstances and provide the contemporaneous supporting evidence.

220. To the extent available, Petitioner also requests preservation of body-worn-camera footage, dash-camera footage, dispatch communications, and other recordings relevant to the timing and manner of arrest.

221. If material factual disputes remain after production of the return, Petitioner requests an expedited evidentiary hearing.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner JOSE LUIS FERNANDEZ GOMEZ respectfully requests that this Court:

A. Exercise jurisdiction over the Petition pursuant to 28 U.S.C. § 2241;

B. Direct an expedited return pursuant to 28 U.S.C. § 2243 and applicable Central District procedures;

C. Determine that Petitioner's interior detention is governed by § 1226(a), absent proof of another applicable statutory basis;

D. Require Respondents to produce any Form I-200, complete issuance and approval records, and evidence establishing whether the warrant existed before the physical arrest;

E. Require production of the Form I-213, Field Operation Worksheet, officer narratives, operational records, and individualized pre-arrest likelihood-of-escape assessment;

F. Determine, upon the requisite factual findings, that the September 25, 2026 warrantless arrest violated 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii);

G. Consider the applicability and statutory reasoning of the amended preliminary injunction in *Vasquez-Perdomo v. Mullin*;

H. Require Respondents to produce the initial custody determination, including any Form I-286, related records, and notice of administrative review rights;

I. Determine whether Respondents complied with the initial custody procedures required under § 1226(a) and its implementing regulations;

J. Determine whether Petitioner's continuing detention violates the Fifth Amendment because it was imposed or maintained without legally sufficient procedural safeguards;

K. Issue a Writ of Habeas Corpus directing Respondents To immediately release Petitioner from immigration custody, subject to reasonable lawful noncustodial conditions;

L. Direct return of Petitioner's personal property and identification documents that may lawfully be returned;

M. Require Respondents to file a prompt notice confirming compliance with any release order;

N. Enter narrowly tailored prospective relief prohibiting re-detention upon materially unchanged circumstances without compliance with applicable statutory and constitutional safeguards;

O. Alternatively, order a constitutionally adequate custody-redetermination hearing within seven days before a neutral decision-maker authorized to order release;

P. Require meaningful notice, access to the evidence relied upon, the opportunity to present and contest evidence through counsel, a contemporaneous record, and reasoned findings;

Q. To the extent warranted by the Court's constitutional findings, require Respondents to establish the necessity of continued confinement by clear and convincing evidence and meaningfully evaluate reasonable alternatives to detention;

R. Order release if Respondents fail to provide any required alternative custody proceeding within the time prescribed;

S. Hold an expedited evidentiary hearing if material factual disputes remain regarding the warrant, escape assessment, initial custody determination, or subsequent lawful justification for detention;

T. Retain jurisdiction as appropriate to enforce the writ and any prospective relief; and

U. Grant such other and further relief as law and justice require.

Dated this 9th day of October, 2026.

/s/*Alex Galvez*________________
Alex Galvez, Esq.
Attorney for Petitioner

**VERIFICATION BY PETITIONER PURSUANT TO 28 U.S.C. § 2242**

I, Alex Galvez**,** am submitting this verification on behalf of JOSE LUIS FERNANDEZ GOMEZ, who is currently detained by the U.S. Department of Homeland Security at the ADELANTO ICE PROCESSING FACILITY in Adelanto, California. Petitioner is being held under conditions that severely restrict or prevent meaningful communication with the outside world.

As a result, he is unable to review or sign this petition personally or to prepare and file it on his own behalf.

I have communicated with Petitioner to the extent possible and have obtained the factual information contained in this Petition from my direct knowledge, records, and reliable sources. I hereby verify that, to the best of my knowledge and belief, the factual statements contained in the attached Petition for Writ of Habeas Corpus are true and correct, and that I could testify to those facts if called upon to do so.

Date: 10/9/2026

/s/*Alex Galvez*____________
Alex Galvez